GEORGE E. MONTGOMERY AND C. A. BURKE v. L. M. LEWIS, ABE SHAPIRO AND RACHEL SHAPIRO.

(Filed 16 April, 1924.)

**1. Evidence—Motions—Dismissal—Demurrer.**

Upon a motion to dismiss a civil action as in case of nonsuit, the evidence is construed in the light most favorable to the plaintiff as in case of demurrer thereto.

**2. Evidence—Compromise—Admissions.**

While evidence of a compromise of a civil action is ordinarily rejected upon the trial, this principle is inapplicable when the party has throughout unequivocally asserted his original position, and the evidence objected to is of an admission of an independent fact, material to the inquiry.

**3. Evidence—Fraud—Damages—Written Instruments—Correction—Burden of Proof—Quantum of Proof.**

An action to recover damages for the fraud of the grantee in knowingly taking advantage of the plaintiff's mistake, or that of his draftsman, in including in his deed a lot of land that neither he nor his grantee had contemplated, does not require clear, cogent and convincing proof, as in instances where the instrument itself is sought to be corrected, etc., but only to satisfy the jury by the preponderance of the evidence.

STACY, J., dissenting.

APPEAL by defendant Lewis from *Lane, J.,* at November Term, 1923, of FORSYTH.

Civil action. Plaintiff took a voluntary nonsuit as to Shapiro and wife. The plaintiff Montgomery alleged that prior to 23 July, 1917, he was the owner of two lots in Winston-Salem, known as lots No. 6 and No. 7 on the property of the Ingle Land Company; that at said date he conveyed lot No. 6 to his coplaintiff Burke, who failed to register his deed; that soon afterwards he sold to the defendant Lewis lot No. 7; that lot No. 6 was embraced in the deed by the mutual mistake of Montgomery and Lewis, or by the inadvertence of the draftsman; that Lewis had wilfully and fraudulently accepted a deed including both lots, knowing that it was not the intention of Montgomery to convey lot No. 6; and that Lewis received the deed with intent to cheat and defraud the plaintiffs.

The defendants denied the material allegations in the complaint.

At the trial the plaintiffs abandoned their allegation of fraud in procuring the deed and its fraudulent alteration after delivery, together with the allegation of mutual mistake. The following issues were submitted and answered:

1. Did the defendant L. M. Lewis accept a deed to lot No. 6 described in the complaint, knowing that the description of the same was inserted by mistake, and did he receive said deed with intent to cheat and defraud the plaintiff? Answer: Yes.

2. Did he afterwards convey said lot to A. Shapiro for a valuable consideration? Answer: Yes.

3. What actual damage, if any, did the plaintiff sustain? Answer: $200.

4. What punitive damage, if any, is the plaintiff entitled to recover? Answer: None.

Judgment for the plaintiff, from which the defendant Lewis appealed.

*Parrish & Deal for the appellee.*
*Raymond G. Parker and Moses Shapiro for the appellant.*

ADAMS, J. We need cite no authority in support of the principle that a motion to dismiss an action as in case of nonsuit is treated as a demurrer to the evidence construed in the light most favorable to the plaintiff. This is elementary, and the evidence tested by this principle was sufficient to uphold the verdict. The motion to nonsuit was therefore properly overruled.

The defendant excepted to certain evidence on the ground that it embodied a rejected offer of compromise. It is true, if a person offer to compromise a demand he does not thereby necessarily admit that it is just, but if pending a compromise he make a distinct admission of an independent fact the admission may be received in evidence. *Daniel v. Wilkerson,* 35 N. C., 329; *Smith v. Love,* 64 N. C., 439; *Baynes v. Harris,* 160 N. C., 307; *Comrs. v. Scales,* 171 N. C., 523.

Upon this principle certain admissions or declarations of the defendant would have been competent even if the parties had been negotiating a compromise; but, as we understand the record, instead of trying to effect a compromise the plaintiff steadfastly insisted that the defendant should pay him the full value of the lot.

Exceptions were taken to his Honor's refusal to give certain prayers for instructions which were based upon the plaintiff's abandonment of the allegations of fraud in procuring the execution of the deed, of an alteration in the deed after it had been delivered, and of the mutual mistake of the parties, but these exceptions are not tenable. The judge definitely instructed the jury that the plaintiff relied only upon the allegations in reference to the insertion in the deed of lot No. 6 through the draftsman's mistake and the defendant's fraudulent acceptance of the deed with full knowledge of the facts; and the first issue, it will be noted, strictly conforms to these allegations.

Exceptions 12, 13, 15, 16 and 17 are addressed to instructions as to the burden of proof, the defendant contending that the alleged cause of action could be maintained only by evidence that was clear, cogent, and convincing, and not by a mere preponderance, as his Honor charged.

In civil cases the general rule is that a preponderance of the evidence is sufficient to determine the verdict, and this rule will apply in .the instant case unless the allegations demanded a greater degree of proof. It will be noticed that the first issue is simple, the only question being whether the defendant with intent to deceive accepted the deed knowing that by another's mistake he was getting a lot that he had not purchased.

Our decisions recognize the principle that in an action to obtain remedial relief against the apparent force and effect of a written instrument on the ground of fraud, mutual mistake, or other similar cause, or to restore such instrument when lost, the evidence must be clear, cogent, and convincing; and in applying the principle the Court has held that this degree of proof is necessary, for example, to correct a mistake in a deed or other writing, to establish a lost deed, to convert into a mortgage a deed which is absolute on its face, to attach a parol trust to a legal estate, and to impeach the probate of a married woman's deed. *Plummer v. Baskerville,* 36 N. C., 252; *Fisher v. Carroll,* 41 N. C., 485; *Moore v. Ivey,* 43 N. C., 193; *Ely v. Early,* 94 N. C., 1; *Loftin v. Loftin,* 96 N. C., 95; *Kornegay v. Everett,* 99 N. C., 30; *Hemphill v. Hemphill, ibid.,* 436; *Pollock v. Warwick,* 104 N. C., 638; *Summers v. Moore,* 113 N. C., 394; *Nimocks v. McIntyre,* 120 N. C., 326; *Porter v. White,* 128 N. C., 42; *Benedict v. Jones,* 129 N. C., 470; *Warehouse Co. v. Ozment,* 132 N. C., 839; *Avery v. Stewart,* 136 N. C., 426; *Lehew v. Hewett,* 138 N. C., 6; *King v. Hobbs,* 139 N. C., 170; *McWhirter v. McWhirter,* 155 N. C., 145; *Cunningham v. Long,* 186 N. C., 526.

In all these cases and in others holding that clear, strong, and convincing evidence was necessary the plaintiffs sought relief against an interest or claim which might be defeated by restoring a lost instrument or against the apparent effect of an existing instrument which was the subject of litigation. In each case the purpose was to create a situation or to bring about some change that was inconsistent with the apparent effect of the writing or to show that such writing had been lost or destroyed. But when the relief demanded was that the deed should be declared void because it was procured by fraud or undue influence or because it was executed with intent to hinder, delay or defeat creditors, the decisions have held uniformly that a preponderance of evidence was sufficient to establish the material allegations. *Harding v. Long,* 103 N. C., 1, 9.

It must not be forgotten that the object of the present action is not to correct or even to set aside or modify the defendant's deed, or to obtain relief against its apparent effect. The deed remains intact; but the object is to recover the value of the lot, the retention of which by the defendant would constitute unearned benefit or "unjust enrichment."

Williston says, "The same principle of justice which requires the return of money paid under a mistake requires that other benefits received under a similar mistake should likewise be restored." Contracts, vol. 3, sec. 1575. The suit has its foundation in the doctrine of *quasi*-contracts—obligations occupying a field between contract and tort. They are imposed or created by law without regard to any agreement on the part of the party bound, because his promise is fictitious and his liability arises from implication of law, as when a person by wrongfully detaining or appropriating the property of another becomes liable to the owner for its reasonable value. 13 C. J., 244 (10); 6 R. C. L., 588 (7).

The plaintiff contended that he did not sell the defendant lot No. 6, and that the defendant, knowing the lot was inserted in the deed by mistake, accepted the conveyance with intent to deceive. Under these circumstances the plaintiff was required to establish the affirmative of the issue, as under the general rule, only by a preponderance of the evidence.

We have examined the other exceptions but they require no discussion.

We find no error in the record.

No error.

STACY, J., dissenting: I am unable to agree to the proposition that the present action is not to obtain relief against the apparent effect of plaintiff's deed. The deed, upon its face, purports to convey, and does convey, lot No. 6 as well as lot No. 7. If this represent the actual transaction between the parties, then the defendant has rightfully acquired title to both lots, and the plaintiffs have been paid for what they sold.

On the other hand, for plaintiffs to undertake to recover the value of lot No. 6 upon the theory of an "unjust enrichment," thereby affirming the deed, it is necessary for them to assert that when L. M. Lewis, their grantee, took title to said lot, he did so in trust for them; and it is the law of this State that no trust will be implied or allowed to result in favor of grantors, as against the terms of their own deed, by reason of the circumstance that no consideration was in fact paid or that the same was different from the recital contained in the deed. *Gaylord v. Gaylord,* 150 N. C., 222, and cases there cited. If *A.* make a deed to *B.* for a tract of land, with no agreement as to the purchase price, *A.* cannot recover in a suit against *B.* for its value, except upon the theory that *B.* has something which in reality belongs to *A.,* and this he may not show without an attack of some kind upon the apparent force and effect of his deed. *A.'s* right to affirm the deed and sue for damages, where the land has passed into the hands of an innocent purchaser, as it has here, is bottomed upon his initial right to impeach the deed. This is a

barrier which he must overcome before he can establish his right to damages in an action like the present.

Plaintiffs have abandoned their allegation of fraud in procuring the deed, and its fraudulent alteration after delivery, together 'with the allegation of mutual mistake; they rely entirely upon the allegation of mistake on their part, and fraud on the part of the defendant. Therefore, at the threshold of the case, they must show: (1) that the description of lot No. 6 was inserted by their mistake; and (2) that the defendant, with knowledge of this mistake, accepted the deed with intent to cheat and defraud the plaintiffs. The mistake of the plaintiffs, if not the fraud of the defendant, according to our decisions, must be established by clear, strong and convincing evidence. *Harding v. Long,* 103 N. C., 1; *Lamb v. Perry,* 169 N. C., p. 444.

The reason for this is, the plaintiffs are asking to be relieved, not only as against the fraud of the defendant, which, under the circumstances, would not be sufficient, but also from the consequences of their own mistake; and this must be established by evidence stronger than the deed itself. *Ely v. Early,* 94 N. C., 1. There is no allegation that the plaintiffs' mistake was induced by the fraud of the defendant.

This rule as to the *quantum* of proof makes for the preservation of titles; it was adopted in the interest of upholding their integrity, and it should not be relaxed.