ZARN, INC. v. SOUTHERN RAILWAY COMPANY

No. 8017SC398

(Filed 20 January 1981)

**1. Carriers § 10— damages to goods during shipment — no special or consequential damages**

In an action to recover damages to plaintiff's storage bins while being transported by defendant carrier, the trial court did not err in granting partial summary judgment for defendant on the issue of special or consequential damages, since the wording of the Carmack Amendment to the Interstate Commerce Act restricts a plaintiff's recovery to the damage to the property itself, and does not allow incidental, special or consequential damages, unless plaintiff shows that the contract of carriage itself imposes such liability or that actual notice of the possibility of the injury was given to the carrier, and plaintiff made no such showing in this case.

**2. Carriers § 10— goods damaged during shipment — measure of damages — instructions proper**

In an action to recover for damages to plaintiff's storage bins while in transit, there was no merit to plaintiff's contention that the trial court erred in failing to instruct the jury as to the alternative measure of damages in the event the property had no market value and in failing to instruct the jury that it could consider the cost of replacement in determining the fair market value, since plaintiff did not specially request such an instruction, and the trial court's jury instruction adequately charged the jury on the ordinary measure of general damages.

APPEAL by plaintiff from *Wood (William Z.), Judge.* Judgment entered 27 December 1979 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 15 October 1980.

This is an action against defendant railroad, a common carrier for hire, for damage to plaintiff's storage bins (silos) while in transit from Savannah, Georgia to Reidsville, North Carolina. In its complaint, plaintiff alleged that the silos were damaged by the negligence of defendant. Plaintiff alleged damages for: (1) the loss of the silos themselves; (2) the extra costs of locating and installing a replacement; (3) the loss of use of the silos for sixty-nine days. In its answer, defendant alleged that plaintiff had not notified defendant that plaintiff would incur special damages in the event of damage to the freight.

Zarn, Inc. v. Railway Co.

The defendant having admitted liability, the parties stipulated that the only issue for determination at trial was the amount of damages.

The undisputed evidence in the record shows delivery of the property — two used twelve by forty foot silos — to the defendant carrier in good condition and the delivery of the property by defendant to plaintiff in damaged condition. Plaintiff refused to accept delivery of the damaged silos and defendant took possession of the silos for salvage purposes.

On motion of defendant, the trial court granted partial summary judgment against plaintiff finding "no genuine issue as to any material facts with reference to any special or consequential damages the plantiff has incurred by reason of extra cost incurred in locating and installing replacement equipment, loss of storage capacity and overhead expense resulting from the loss of use of the bins." In ruling on this motion the trial judge considered the affidavit of Robert G. Hartman, executive vice president for manufacturing of plaintiff. This affidavit indicated that plaintiff intended to use the silos for storage of plastic materials in connection with plaintiff's plastic manufacturing business. Unlike silos used for other functions, silos used in the plastic industry must possess special design features. Therefore not all used silos were suitable for plaintiff's special requirements. Hartman's affidavit also indicated that the damage to the silos in transit was such that it was impossible to restore the silos' special feaures without extensive repairs. There was evidence that subsequent to plaintiff's refusal of the damaged silos plaintiff was unable to locate any used silos that were suitable. Plaintiff eventually purchased as a partial replacement a similarly sized new silo.

Based on the partial summary judgment the trial judge excluded some of the evidence of anticipated use and cost of repair, and instructed the jury on the measure of general damages for property injured or damaged by a carrier in the course of transportation. The sole issue presented to the jury and its answer are as follows:

What amount is the plaintiff entitled to recover from the defendant, Southern Railway Company?
ANSWER: $10,000.00.

*Gwyn, Gwyn & Morgan, by Julius J. Gwyn, for plaintiff appellant.*

*Griffin, Post, Deaton & Horsley, by Hugh P. Griffin, Jr., and*

*William F. Horsley, for defendant appellee.*

WELLS, Judge.

**[1]** Plaintiff assigns as error: the trial court's granting of partial summary judgment on the issue of special or consequential damages; the trial court's formulation of the measure of general damages in the jury instructions; and, the trial court's exclusion of certain evidence. We first consider the order of partial summary judgment. The trial court's order of partial summary judgment provided in pertinent part as follows:

> After reviewing the Court records, the affidavits, the briefs of counsel, and after hearing the arguments of counsel, the Court finds that there is no genuine issue as to any material facts with reference to any special or consequential damages the plaintiff has incurred by reason of extra cost incurred in locating and installing replacement equipment, loss of storage capacity and overhead expense resulting from the loss of use of the bins.
>
> IT IS, THEREFORE, ORDERED that defendant's motion for partial summary judgment is hereby allowed as to special or consequential damages the plaintiff may have incurred by reason of extra cost incurred in locating and installing replacement equipment, loss of storage capacity and overhead expense resulting from the loss of use of the bins.

As a common carrier engaged in interstate commerce, defendant's liability for damage to cargo is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(1). *Home Products Corp. v. Motor Freight, Inc.*, 46 N.C. App. 276, 278, 264 S.E. 2d 774, 776, *disc. rev. denied*, 300 N.C. 556, _____ S.E. 2d _____ (1980); *see also Dublin Company v. Ryder Truck Lines, Inc.*, 417 F. 2d 777, 778 (5th Cir. 1969); *Neece v. Greyhound Lines*, 246 N.C. 547, 550, 99 S.E. 2d 756, 759 (1957). Under the Carmack Amendment the carrier is liable in the absence of a special contract for "the full actual loss, damage, or injury to such property." 49 U.S.C. § 20(11); *see S. Sorkin, Loss or Damage to Goods in Transit* § 11.02 (1979). This language has been construed as adopting the common law principles of damages. "Section 20(11) of the Interstate Commerce Act . . . codifies the common

law rule that a carrier is liable for all damage sustained by goods in transit unless it can prove that the loss was due entirely to an excepted cause . . . ." *Masonite Corp. v. Norfolk & Western Ry. Co.,* 601 F.2d 724, 728 (4th Cir. 1979); *see also Tool Corp. v. Freight Carriers, Inc.,* 33 N.C. App. 241, 245, 234 S.E. 2d 758, 761 (1977). A carrier may limit its liability for negligent loss or damage to the property entrusted to it by special contract but unless specially pleaded by the carrier such contractual limitation is ineffective. *Clott v. Greyhound Lines,* 278 N.C. 378, 386, 180 S.E. 2d 102, 108 (1971); *see Leary v. Transit Company,* 22 N.C. App. 702, 706-7, 207 S.E. 2d 781, 785 (1974); 13 C.J.S. Carriers, § 252(c), at 527-28 (1939). In the case *sub judice,* defendant, having alleged no special contract, and having admitted liability, is liable for the full actual damage to the silos. Plaintiff argues that its damages should not be limited, however, to the full, actual damage to the silos, but should include additional damages for loss of use of the silos. We disagree. While in the case *sub judice* plaintiff properly alleged and established a *prima facie* case of negligence by showing delivery to defendant in good condition, and delivery by defendant to plaintiff in damaged condition, *Home Products Corp. v. Motor Freight, Inc., supra,* at 278, 264 S.E. 2d at 776; *see also Clott v. Greyhound, supra,* at 388, 180 S.E. 2d at 110, and while under general principles of law, in a tort claim, special damages are recoverable if specifically pleaded, if proximately and naturally caused by defendant's tortious conduct, and if reasonably definite and certain, *Huff v. Thornton,* 287 N.C. 1, 8-9, 213 S.E. 2d 198, 204 (1975); *Trucking Co. v. Payne,* 233 N.C. 637, 639, 65 S.E. 2d 132, 133 (1951), we believe that the general principles of tort law do not apply here.

Sound public policy requires, as the law provides, that when goods are damaged while in transit by common carrier, the shipper is not put to the burden of showing either specific acts of negligence or where or how the damage occurred. *See S. Sorkin, supra,* § 5.02; *Home Products Corp. v. Motor Freight, Inc., supra.* Sound public policy also requires that the liability of common carriers for such damage be limited to the loss of value of the property, as such value is determined under the general law of damages. While there is some case law to the contrary, we believe that the sounder view is that the wording of the Carmack Amendment restricts plaintiff's recovery to the damage to the property itself, and does not allow incidental, special or consequential damages, unless plaintiff shows that the contract of carriage itself imposes such liability or that actual notice of the possibility of

---

**Zarn, Inc. v. Railway Co.**

---

the injury was given to the carrier. To allow special or consequential damages, in the absence of a special contract or actual notice to the carrier, would subject common carriers to unacceptable economic risk. This principle of limited liability was first enunciated in *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145 (1854). In that case, mill operators were forced to close operations in order to ship a broken shaft for repairs. The carrier was not informed of the situation at the mill and negligently delayed shipment. The Court refused to award lost profits for the period of the delay holding that the damages recoverable for breach of contract were limited to those within the contemplation of the defendant at the time the contract was made.

While *Hadley v. Baxendale* involved a delay in shipment, hence an action grounded in breach of contract, we think the underlying public policy rationale of that decision extends to actions grounded upon the negligence of common carriers. We therefore hold that the *Hadley v. Baxendale* principle of limited liability applies to all actions against a common carrier for the loss of or injury to property in transit, whether such action is grounded in tort or contract. *R.R. v. Houtz,* 186 N.C. 46, 48, 118 S.E. 850, 851 (1923); *see also* 14 Am Jur. 2d, Carriers § 648, at 157-58 (1964); 13 C.J.S., Carriers § 267, at 619-20 (1939); *but see Marquette Cement Mfg. Co. v. Louisville & Nashville R. Co.,* 281 F.Supp. 944, 947 (E.D. Tenn., S.D. 1967), *affirmed,* 406 F.2d 731 (6th Cir. 1969). The trial court properly granted defendant's motion for partial summary judgment on the issue of special or consequential damages incurred by plaintiff.

**[2]** Plaintiff next assigns error to the trial court's formulation of the measure of general damages in the jury instructions. The trial court instructed the jury in pertinent part:

> [T]he measure of damages for property injured or damaged by a carrier in the course of transportation such as the Southern Railway, in the course of transportation, is ordinarily the difference between its market value at its destination as it would have arrived but for the injury, and its market value in the condition in which it actually arrived less the unpaid freight.
>
> . . . .
>
> Now, what is fair market value? The fair market value of any property is the amount which would be agreed upon as

Zarn, Inc. v. Railway Co.

a fair price by an owner who wishes to sell but is not compelled to do so, and a buyer who wishes to sell [*sic*] but is not compelled to do so, and in this case, the Southern Railway kept the salvage and they owe the plaintiff very simply what the fair market of those two 12 by 40 foot silos is, and that's what you must determine in this case.

In arriving at that, you can consider what the plaintiff paid for the silos, the availability of the silos in the marketplace. You can consider the cost of repairing these silos. You can — and any other evidence that would reasonably reflect upon what the fair market value of these two silos is.

. . . .

Plaintiff contends that the trial court erred in failing to instruct the jury as to the alternative measure of damages in the event the property had no market value, and in failing to instruct the jury that it could consider the cost of replacement in determining the fair market value. Plaintiff did not specially request such instructions. Normally the measure of damages for tortious injury to personal property is the difference between its fair market value immediately before and immediately after the injury. *Heath v. Mosley,* 286 N.C. 197, 199, 209 S.E. 2d 740, 741 (1974); *Simrel v. Meeler,* 238 N.C. 668, 670, 78 S.E. 2d 766, 768 (1953). In the context of goods injured by tortious acts of carriers, this measure of damages is ordinarily the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value at destination in its damaged condition. *Farming Co. v. R.R.,* 189 N.C. 63, 68, 126 S.E. 167, 170 (1925); S. Sorkin, *supra,* § 11.03. The cost of repairs made necessary by the injury is properly considered by the jury when determining the fair market value. *Simrel v. Meeler, supra,* at 670, 78 S.E. 2d at 768; *see also Cooper Agency v. Marine Corp.,* 46 N.C. App. 248, 253, 264 S.E. 2d 768, 771 (1980). Although not a model of precision, we hold that the trial court's jury instruction adequately charged the jury on the ordinary measure of general damages and fully complied with G.S. 1A-1, Rule 51(a). Absent a special request by plaintiff to fully define or to elaborate the damages rule, the fact that the jury instructions included only the general rule for determining the damages is not grounds for reversal. *See Board of Transportation v. Rand,* 299 N.C. 476, 483-84, 263 S.E. 2d 565, 570-71 (1980); 22 Am. Jr. 2d, Damages § 346, at 449 (1965). "It is the duty of the party desiring instructions on a

subordinate feature of the case or greater elaboration on a particular point to aptly tender request for special instructions." *Hanks v. Insurance Co.,* 47 N.C. App. 393, 404, 267 S.E. 2d 409, 415 (1980). Plaintiff's assignments of error concerning the jury instructions are overruled.

Plaintiff's final assignments of error concern the trial court's exclusion of certain evidence of the anticipated use and of the cost of repair or replacement. Any possible error in excluding this evidence was cured by the testimony of plaintiff's first witness, Jay W. Munsell, a sales manager of the materials handling company that sold the silos to Zarn, who testified in detail about plaintiff's intended use of the silos and about his company's estimates of both the cost or repair of the damaged silos and the cost of new replacement silos. *Gibbs v. Light Co.,* 268 N.C 186, 190, 150 S.E. 2d 207, 210 (1966); *accord, Eaves v. Coxe,* 203 N.C. 173, 177-78, 165 S.E. 345, 347 (1932). Plaintiff's final assignments of error are without merit.

No error.

Judges VAUGHN and MARTIN (Harry C.) concur.